**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| APRIL CHRITINE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-20-012-JFH-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff April Christine Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 46 years old at the time of the decision. She obtained a GED and has past relevant work as a hand packer and nurse assistant. Claimant alleges an inability to work beginning on February 1, 2016, due to limitations resulting from post-traumatic stress disorder (PTSD), bipolar disorder, low IQ, anxiety, paranoia, anger, insomnia, impulsiveness, and poor memory.

## Procedural History

On October 16, 2016, Claimant filed an application for a period of disability and disability insurance benefits pursuant to Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her application was denied initially and upon reconsideration. On

November 16, 2018, ALJ James Stewart conducted a video hearing from Tulsa, Oklahoma. Claimant appeared from Fort Smith, Arkansas. On December 4, 2018, the ALJ entered an unfavorable decision. The Appeals Council denied review on December 2, 2019. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with mental limitations, including her past relevant work as a hand packer.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an improper RFC determination (with various subparts), and (2) finding she had the ability to perform her past relevant work or the jobs identified at step five of the sequential analysis.

## RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of bipolar disorder, PTSD, personality disorder unspecified with paranoia (borderline and dependent feature), and borderline intellectual functioning. (Tr. 18). She could perform

4

a full range of work at all exertional levels, with additional mental limitations. Claimant could perform only unskilled work consisting of simple and routine tasks with routine supervision that require only that she be able to understand, remember, and carry out simple instructions. She could relate to supervisors and coworkers on a superficial and work-related basis and adapt to a work situation. As part of routine job duties, Claimant should work at her own workstation or location independently performing tasks, without having to directly interact with co-workers to perform the tasks. She should have no contact with the general public, defined by the ALJ as "interaction with the general public is not part of the job duties, and any contact would . . . in most cases be incidental and superficial[.]" (Tr. 20).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a hand packer. (Tr. 26). In the alternative, he determined Claimant could perform the representative jobs of housekeeping/cleaner, industrial sweeper, and conveyor feeder, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 27). As a result, the ALJ concluded Claimant was not under a disability from February 1, 2016, through the date of the decision. (Tr. 27).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence for several reasons. She first argues the ALJ improperly considered the opinion of nurse practitioner Kellie

5

Berry-Hert, APN, who provided Claimant mental health treatment through Valley Behavioral Health. She asserts the reasons given by the ALJ for affording "very little weight" to the opinions recorded by Ms. Berry-Hert on the medical source statement violate the requirements of the regulations, as Ms. Berry-Hert's opinion is entitled to controlling weight.

The ALJ addressed Ms. Berry-Hert's treatment notes and the medical source statement she completed at length in the decision. Ms. Berry-Hert examined Claimant on three occasions between March 31, 2016, and September 16, 2016. The ALJ summarized her findings in detail in the decision, noting Ms. Berry-Hert diagnosed Claimant with bipolar I and PTSD. Ms. Berry-Hert noted Claimant felt "pretty good" but was anxious and irritable. She indicated Claimant's appearance was appropriate and she was well-groomed. Although her mood was reported as irritable and anxious, Claimant was alert, cognition intact, oriented times three, thought content was within normal limits, and she was attentive and cooperative. Claimant reported poor sleep onset, but her medication was helping. There were no indications for self-harm or harm to others. In September of 2016, Claimant reported difficulty maintaining employment. She was appropriate and well-groomed, her mood as labile, but her affect was within normal limits, cognition was intact, alert, and oriented times three. Her behavior was attentive and cooperative, but her thought content was paranoia. (Tr. 22, 321-23).

Ms. Berry-Hert completed a medical source statement for Claimant in September of 2016. The ALJ discussed her findings on the form in detail, noting the functional limitations ranged from mild to extreme and were based on Ms. Berry-Hert's review of Claimant's file, personal care/treatment and observation, and psychiatric care. Ms. Berry-Hert diagnosed Claimant with PTSD and bipolar symptoms of unstable mood, anxiety, anger, impulsiveness, paranoia, insomnia, poor memory, and distractibility. She suffered side effects from her medication of tremors, cognitive impairment, and somnolence. Ms. Berry-Hert noted Claimant's condition had been continuous for more than one year prior to the date of the examination. (Tr. 23, 373-76).

The ALJ also discussed Ms. Berry-Hert's treatment records for Claimant from November of 2016 through July of 2017. Claimant's mood was irritable, and she suffered from anger issues, but her affect was within normal limits. Claimant had quit her job and was hoping for disability. She was appropriate/well-groomed, alert with cognition intact, and attentive and cooperative. There was no indication for risk to herself or others. Ms. Berry-Hert continued to assess Claimant with bipolar I and PTSD. (Tr. 24-25, 353-55).

The ALJ discussed Ms. Berry-Hert's opinion in the decision:

> The undersigned considered the fact that Ms. Berry-H[e]rt is the claimant's primary provider. However, taken as a whole he accords very little weight to [M]s. Berry-H[e]rt's opinions. First, it was completed on a poorly formulated representative supplied form instead

>of a readily available approved SSA form that would have provided a consistent evaluation instead of attempting to create additional vocational language (clearly defining moderate limitations as disabling). Second, her treatment notes are not consistent with her opinion. For example, she opined the claimant would have severe problems with remembering work like procedures. Yet, her treatment records consistently found she was attentive(Exhibit 3F/1-9 and Exhibit 10F/1-3). Ms. Berry-H[e]rt opined the claimant would have severe limitation with maintaining socially appropriate behavior and adhere to basic standards of neatness and cleanliness. However, her records over a two year period found that she was consistently well groomed and her appearance was appropriate (Exhibit 3F/1-9 and Exhibit 10F/1-3). Third, her opinions are not consistent with the claimant's other examinations. Her discharge mental status examination found the claimant was well ke[p]t, mood was 'good', she was cooperative, and cognition and psychomotor behaviors were within normal limits (Exhibit 2F/1-10). Her affect was congruent and non-labile, thought process was linear and goal directed, denied audio/visual hallucinations, and insight/judgment was adequate (Exhibit 2F/1-10). Finally, Ms. Berry-H[e]rt's opinion is not consistent with the claimant's own reports. For example, she reported the claimant had side effects of cognitive impairment and somnolence but the claimant denied any side effects of her medication at the hearing.
>
>The most significant deficiency in Ms. Berry-H[e]rt's opinions is that they [are] inconsistent with the claimant's documented work record. Ms. Berry-H[e]rt specifically states that her opinions cover a period 1 year prior to the examination, which is presumably the signature date of September 16, 2016. (Exhibit [14F]/4). As shown by the earnings records cited above, the claimant was working at SGA level for approximately seventy-five percent of the one-year period stated by Ms. Berry-H[e]rt as being applicable to the marked and extreme limitations professed in her medical source statement. Accordingly, the claimant's actual work record is wholly inconsistent with Ms. Berry-H[e]rt's clearly exaggerated opinions.

(Tr. 23-24).

As a nurse practitioner, Ms. Berry-Hert is not considered an "acceptable medical source," but is considered an "other source." *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *2 (Aug. 6, 2006); *see also Nichols v. Astrue*, 341 Fed. Appx. 450, 453-54 (10th Cir. 2009) (noting a nurse practitioner is not an acceptable medical source). When considering "other source" evidence, the ALJ should still explain the weight given to opinions from other sources, but such an explanation "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d 1156, 1163-64 (10th Cir. 2012), quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . .").

Here, although the ALJ noted his disapproval of the medical source statement form utilized by Ms. Berr-Hert, he provided several other reasons for determining her opinions expressed on the form were entitled to "very little weight." As outlined above, he acknowledged Ms. Berry-Hert was Claimant's primary provider, but found her opinions were not consistent with her treatment notes, providing examples in the decision. He noted her opinions were inconsistent with her other examinations, again citing examples in the decision. The ALJ further noted Ms. Berry-Hert's

9

opinion was inconsistent with Claimant's own reports. The most significant deficiency he noted in Ms. Berry-Hert's opinion was that it was inconsistent with Claimant's documented work record, as Claimant was working at a substantial gainful activity level during part of the time frame for which Ms. Berry-Hert opined Claimant suffered from marked and extreme limitations. In this case, the ALJ provided an adequate basis for the weight assigned to Ms. Berry-Hert's opinions.

Claimant next asserts that the record evidence demonstrates she has psychological and cognitive impairments beyond those acknowledged by the ALJ in the RFC assessment. She mentions certain findings made by Robert Spray, Ph.D., from his consultative examination of Claimant on May 19, 2017, and other findings in the record, which she argues should have resulted in a more limited mental RFC. In addition to the opinions of Ms. Berry-Hert, the ALJ considered the evidence referenced by Claimant, including the examination findings of Dr. Spray. (Tr. 21-26, 346-51). He considered the opinions of the state agency psychological consultants. (Tr. 26, 74-76, 89-91). The ALJ included those mental limitations in the RFC that he found were supported by the evidence. He explained in detail why the evidence did not support more limiting mental limitations. (Tr. 25-26). This Court finds no error in the ALJ's consideration of Claimant's mental limitations in the RFC assessment. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th

Cir. 2007) (noting a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence).

Claimant also contends the ALJ failed to account for certain limitations for her physical impairments in the RFC, including notations by consulting physician Wojciech Dulowski, M.D., when he examined Claimant on March 20, 2017, that she had painful range of motion and tenderness in her lumbar spine, a history or ACL repair on the left, and a history of mechanical back pain with right radiculopathy. The ALJ discussed Dr. Dulowski's examination in the decision, noting the above findings, but also his findings that Claimant had good coordination, strength was equal in the upper and lower extremities, no pathological reflexes were noted, and deep tendon reflexes were symmetrical in the upper and lower extremities. Even though there was "slight tenderness" of the lumbar spine, passive movement in the upper and lower extremities was normal. Dr. Dulowski assessed Claimant with history of bipolar disorder, insomnia, history of ACL repair on the left side, and history of mechanic back pain with right radiculopathy, but neurologically Claimant seemed intact. (Tr. 24, 338-43). Here, Dr. Dulowski did not access Claimant with any functional limitations. The ALJ properly considered his examination of Claimant in the decision.

Also related to her physical RFC, Claimant argues the ALJ failed to properly consider the state agency physician's opinion

that Claimant was limited to light work with additional postural limitations. Defendant admits the ALJ "mistakenly" noted in the decision that both state agency physicians concluded Claimant did not have any severe physical impairments. (Tr. 26). One of the state agency physicians, however, determined Claimant could perform only light work, including postural limitations for occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling. (Tr. 73-74). Defendant argues the ALJ's oversight is harmless and does not require reversal because the housekeeping/cleaner job identified by the VE as a job Claimant could perform at step five is not precluded and exists in significant numbers in the national economy.

Although the state agency physician's opinion limiting Claimant to light work with certain postural limitations precludes Claimant's performance of her past relevant work as a hand packer and the step-five jobs of industrial sweeper and conveyor feeder identified by the VE, the ALJ's omission represents harmless error as the housekeeping/cleaner job, also identified by the VE, is performed at the light exertional level and requires only occasional stooping, kneeling, and crouching, with climbing, balancing, and crawling not required to perform the job. *See* DOT 323.687-014, 1991 WL 672783. The VE testified that 150,000 of these jobs exist in the national economy. (Tr. 57). The identification

of this job in these numbers is sufficient to conclude that "[a]ny reasonable trier of fact would be compelled to conclude that [150,000] is a significant number of jobs for purposes of a step-five determination." *Bainbridge v. Colvin*, 618 Fed. Appx. 384, 392 (10th Cir. 2015); *see also Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability). As a result, the ALJ's failure to properly account for the state agency physician's opinion limiting Claimant to light work with additional postural limitations in the RFC constitutes harmless error.

Claimant further argues the ALJ's RFC determination was improper because he failed to properly evaluate her subjective complaints. The ALJ summarized Claimant's testimony and concluded it was inconsistent with the medical evidence. He referenced her inconsistent statements that she could only sit for fifteen to twenty minutes, yet she sat for almost an hour for the hearing. He noted her contention that she became unable to work on February 1, 2016, although she continued to work until June of 2016. He also noted her lack of treatment for physical impairments and her inconsistent statements regarding why she was fired from her job. The ALJ discussed that although Claimant had been diagnosed with multiple mental impairments, her medication management

appointments did not support her severe allegations, as examination findings revealed she was appropriate/well-groomed, her cognition was intact, she was alert, attentive, and there was no indication of risk to herself or others. Although her mood was noted to be irritable and/labile at times, she was consistently noted to be cooperative. Moreover, although Dr. Spray assessed her with borderline functioning, Claimant testified she passed her GED test and was a certified nursing assistant, a job which she held for a period of time, indicating some inconsistencies between her score and history of academic and vocational accomplishments. (Tr. 25-26).

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of

14

the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, there is no error by the ALJ, as he relied upon appropriate factors in evaluating Claimant's subjective complaints.

### Step Four and Step Five Analysis

Claimant contends the ALJ improperly performed the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), when determining she could perform her past relevant work. Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant has the ability to meet the job demands of his past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. As previously noted, the ALJ failed to properly consider the state agency physician's opinion limiting Claimant to light work with certain postural limitations. The opinion would preclude Claimant from returning to her past relevant work as a hand packer, as the position is performed at the medium level.

If the ALJ's step-four analysis is insufficient, however, and the ALJ's alternative finding at step five is supported by the record, any error at step four is considered harmless. *See Best-Willie v. Colvin*, 514 Fed. Appx. 728, 738 (10th Cir. 2013) ("[A]ny legal error at step four is harmless in view of the ALJ's alternate

finding at step five that other jobs existed in significant numbers in the national economy [the claimant] could perform given her RFC[.]"), citing *Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four).

Regarding the step-five determination, Claimant argues she cannot perform the step-five jobs identified by the VE because the RFC did not include all her limitations. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

As previously determined, although the ALJ failed to properly discuss the state agency physician's opinion limiting Claimant to light work with postural limitations, which would preclude Claimant from performing the jobs of industrial sweeper and conveyor feeder, the VE also testified Claimant could perform the

light-level job of housekeeping/cleaner with the limitations included by the ALJ in his hypothetical question to the VE. (Tr. 27, 55-57). The postural limitations determined by the state agency physician do not preclude Claimant's performance of the job, *see* DOT 323.687-014, 1991 WL 672783, and the job exists in significant numbers. *See Bainbridge,* 618 Fed. Appx. at 392. Thus, the ALJ's step-five finding is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of February, 2021.

                KIMBERLY E. WEST
                UNITED STATES MAGISTRATE JUDGE